Morning. The court has some business and actually I'm the one who's making the motion, so Rich Clevenger, you must preside. The motion is that I, Lindsay, would you arise? I'd like to move the admission of Lindsay M. Hopkins, who's a member of the bars of the state of Massachusetts and the United States Supreme Court. And as you both know, she's been my law clerk for the last year and served me magnificently and served the whole court, I think, magnificently. And it's just great joy for me to move her admission to our bar, if my colleagues will agree. Please. Yes. On behalf of the court, I'm delighted to say that the motion for admission to the court is granted. With pleasure, would you please face the clerk for the administration of the oath? You raise your right hand. Do you swear or affirm that you comport yourself as an attorney and counsel of this court, uprightly and according to law, to support the Constitution of the United States of America? I do. Congratulations. Welcome to the bar of the United States Court of Appeals. I think I'm back at the helm, right? Then let's have our first case this morning, Dominion Resources versus the United States. Mr. Fox. Good morning, your honors. I would like to, if I may, first present my colleagues, Leslie Schneider and Patrick Smith, who are on the brief with me. Can I just ask a couple of quick questions to make sure I understand the situation? With regard to the calculation of the interest here, there's a time value, isn't there? I mean, it wasn't your charge on an annual basis. I think there were four periods you were adjusting to. Well, once you come up with the appropriate interest rate, and you see if you have enough in the way of borrowings, it would exceed the cost of whatever you're doing. So essentially paid on the time that the plant was out of service, right? Yes. Now, with respect to the avoided cost method, I gather you don't have any objection to its application with respect to the burners. We're talking about the associated property here. Oh, yes. As to the burners themselves, you have no objection. No, no. We agree that the burners are what create the amount of capitalized interest. Absolutely. I have a question. Now, and this goes to the issue of loss of revenue during the time that the associated property is out of service. Am I correct that utilities set rates on an annual basis, or let's say that the rates that are set include estimates or have accommodations built into them for times that plants are out of service or for repairs? Yeah, that is absolutely correct, Your Honor. But I do want to make clear that that is not at the core of our case, because that particular factor may be unique to the utility industry, and it may affect some other industries, possibly. But we believe that the position that we're urging here applies across all industries, and we're not asking for any understatement. But it is the case, then, that when it's not the case, that there's no revenue being generated during the downtime period. That is absolutely right. There's no, put it this way, there's no revenue being generated in the sense that when the boiler is down, that boiler is obviously not producing electricity, and so that isn't generating. But in the computation of the allowable revenue that the company is allowed to earn, the fact that it's down does not negatively affect that. Correct. But you do agree there are economic costs to shutting the plant down. Are there economic costs when it's out of service? Yeah. I mean, I... I mean, Judge Lettell made that observation in his opinion, and so he thought there were economic costs associated with the plant being shut down. Well, I think it is certainly true in the sense that that particular boiler is not helping to generate electricity, and so... I mean, when you're not generating electricity, and there may be costs, instead of labor costs that are associated... You may be... Well, yes, you have all of that, but I think that what the amicus was pointing out is that, notwithstanding that, that that loss of revenue can be made up in another fashion, because that's all... I understand that, but I mean, the cost seemed to me to be actual, and what seemed to me that what the government was trying to do was to get a hold of those, what do you want to call them, opportunity costs, or the economic costs of having the plant be shut down while the improvement's being made. Well, the government's looking... I think that that's their surrogate for, say, looking to the interest on the adjusted basis as a rough measuring tool for what those economic costs were. That is certainly an argument they make, but that has come late to the game, and if we get to any explanation that was provided at the time the regulation was adopted, that was never mentioned. This is something that has come up in litigation. We're talking about avoided costs here, aren't we, not economic costs. Well, I understood Judge Clevenger to be talking about economic costs, not avoided costs at this point. Am I correct? Yes, I'm just asking that, because it seemed to me, and I'll ask the government when they get up, I'm looking for the rationale they have for sort of collecting up what looked like the economic costs of the shutdown of the plant, and then treating them as though they're like the bulldozer, or the raw bricks and the other material that are... Exactly, they're treating them like the bulldozer, but there is a provision in the code that allows them to take the basis of the bulldozer into consideration to the extent it's used in a construction... Well, their argument is that there's a gap, that whether or not they could use the plant as well was not answered. Well, okay, first of all, the idea, or arguing that because the statute does not say you cannot include the adjusted basis of the associated property, somehow gives them free license, is clearly a non-starter. If you look at the Supreme Court's decision in the Brown and Williamson case, I mean, there, the FDA was claiming that it could regulate tobacco products. There was nothing anyplace that said the FDA could not do that, but yet, using the tools of traditional statutory construction, the court looked at all the statutes that had any relevance and said, it's clear that Congress never intended the FDA to control tobacco. So, I would like, if I may, to turn to this statute. I mean, it's funny that when I read the government's brief, I was taken back to a moment in my introductory tax course in law school, and the professor had asked me a question, and I responded in the sentence beginning with, you could say that, and he looked at me sarcastically, and he said, Mr. Fox, you could say the moon is made out of cream cheese, but what does the statute say? And I think that the government is not looking at what the statute says. And I would like to start... Where does the statute give us any help? It's very circular. Production expenditures or allocations and allocations are production expenditures. I think that when you study this statute, you will find that the case is actually quite simple, and the statute is very clear. Now, if you would turn to section 263 A.F. 2, two little i's, which is a section we're dealing with. A.F. 2, two little i's, got it. It's looking at how much interest has to be capitalized. Interest on any other indebtedness shall be assigned to such property to the extent that the taxpayer's interest costs could have been reduced if production expenditures had not been incurred. So the key words there are production expenditures. You must determine production expenditures to know how much interest must be capitalized. Now you go down to section 263 A.F. 4, capital C, which defines production expenditures. The term production expenditures means the costs, whether or not incurred during the production period, required to be capitalized under subsection A with respect to the property. So that provision clearly tells you that you must go to subsection A to determine what costs are capitalized into production expenditures for the purpose of determining capitalized interest. Now, when you go to section 263 cap A, small a, you do find that it generally tells you that what has to be capitalized are the direct costs and the indirect costs. Now, the government will say, well, that could include the associated properties adjusted basis. But if you look at what Congress must have had in mind, you will say that is impossible. Just take this case with our facts. You have a boiler. The boiler was put up years ago. At the time the boiler was constructed, I mean, apart from the fact it may have even been before the statute was in place. But the boiler has a basis, and that basis now is depreciated over the life. When you make an improvement to it, you have a cost of the improved. The government wants you to conclude that you take the adjusted basis, the depreciated basis remaining of the associated property, and add it somehow to the cost of the improvement. Now, what do you do with that? The court below said, that means you're kind of capitalizing it a second time, and that's not possible. And not only that, but the whole idea that you would do something with that property is rebutted by section 168 I of the Internal Revenue Code. Because under 168 I, it is clear that when you have a piece of property existing, it's being depreciated, and now you make a capital improvement to that property, that those two pieces of property are each depreciated under their own life. If the life of a boiler, excuse me, arguably is 30 years, so the original boiler is being depreciated over 30 years, and now the improvement, when it is put into service, starts its own depreciation period of its own 30 years. The two things are not depreciated together. So there is no way that Congress could have conceived that the adjusted basis of the associated property would be included in the capitalized cost of the improvement under 263 Cap A Small A. It's an impossibility. There's not a tax lawyer in the country, including at the Internal Revenue Service, who would tell you that it's appropriate for general capitalization purposes to include the adjusted basis of the improved property in the capitalized cost of the improvement. So Congress could not possibly have intended that, and they didn't need to write in here, as the government argues, oh, we can do anything we want unless the statute says you can't do it. Counselor, you're running low on your time. Can you address the Administrative Procedures Act, please? All right. Our position is that the regulation itself is invalid under the Administrative Procedures Act, because when it was promulgated, the Treasury never gave any explanation of the reason for adopting it, and that the case law clearly requires that when promulgating a regulation, the Internal Revenue Service, as any agency, is required to give an explanation of the reasons they choose a particular result, and they gave absolutely nothing. There was a comment period, though, right? There was a comment period, that is true, but whether or not people commented on this is really not at the moment. Judge Latow was of the view that when you come to this question of the explanation and the regulation of why it's being done, that the law doesn't necessarily require an explicit explanation so long as a court can deduce the path, the reasoning that was used. Yes, but as we pointed out in our brief, the path he assumed is not the only possible path. There are other possible paths, and basically... Well, but I mean, as you pointed out in your own brief, the other possible paths are wrong. So why should we assume that the agency acting in its ordinary way would on purpose select an impermissible rationale to possible impermissible rationales when there's a permissible one that they could have adopted? Well, but the permissible rationale that these... By the way, do you know what the path was? Do I know what the path that the Treasury used? Yeah. I would say that anecdotally, I have an idea of why they put it in there, and it's because they were concerned that about this narrow case where a taxpayer could go out and buy property with the intention of improving it, and they would then take the purchased property, put it into service for a brief period, then take it out of service, and put it and then make the improvement, and they would claim the capitalized interest should only apply to the amount of the improvement. And the government was concerned because in that case, and legitimately, if you go out and buy something, take it out of service for a brief period, and then improve it, then the whole purchase price should be taken into consideration. But what is your argument that the Associated Property Rule is too broad a way to deal with the problem you just identified? If there's a problem that the government saw, the government says that we need to come up with a way to make certain that this sort of gaming doesn't happen. And so we devise the Associated Property Rule. Yeah, but the Associated Property Rule really has two pieces, because it does deal with this case as well, but then it goes well beyond that. And it's just, I don't think that when it is clear that in our case, Congress could not have conceived that the basis of associated property would be included in the capitalized cost of the improvement, that the Internal Revenue Service can... I'm struggling to figure out why we're talking about associated property when the legislative history very clearly spoke of the cost avoidance principle. And I'm actually surprised you didn't lead with that argument. And tell me two things, why you didn't lead with that argument, and second, why should we consider the clear principle in the legislative history? It seems to favor your case. Well, I fully agree with you, Your Honor. We do have an extensive part of our brief devoted to that. The reason that I didn't lead with that is that the avoided cost rule speaks in terms of production expenditures, because it specifically says that could have been avoided if funds had not been expended for construction. That's what I'm reading that out of the Senate report. The amount of interest to be capitalized is the portion of the total interest expense incurred during the construction period that could have been avoided if funds had not been expended for the construction. Nothing there about associated property, nothing there about broad considerations of adjusted basis. It's the amount you could have avoided. Right. Well, we started with the other point because we thought that it was just perfectly clear and ended the argument. But we agree that the avoided cost principle strongly supports our case because what that says, basically, it says look into the question of you have a choice. You can spend money on the improvement or you can pay down debt. But the only money we had a choice about spending was what we paid for the improvements. That apart from that, the other money was already sunk years before. Now the government tries to get around that by saying, well, you could have sold the property or they come up with this notion about the adjusted basis being a proxy for the lost income. But that's all made up stuff. I think the government is trying to treat as an amount expended for production this notion that there are costs associated with the plant being shut down. Right. But that's just invented out of cloth. When you lost in revenue is the amount that you spent. Yeah, but that's invented out of whole cloth. Look, you do have a very specific provision in the code that says you look at the basis of property used to produce property. So the construction, that bulldozer you spoke about, that is in the statute. Well, it's inconceivable to me that Congress would have thought they needed a special provision to allow the Internal Revenue Service to require you to include, say, the $100,000 cost of a bulldozer. That's your first argument. That's your step one argument on Chevron. But just assuming for purposes of argument, most of the discussion here has been based on what rationale could you use if you were under step two. I think your time's expired, Mr. Fox. Appellate business is tough. You've got to think in shorter sentences. Ms. Gregory? Thank you, Your Honor. I'm Karen Gregory for the United States. I want to start by clarifying some, what I've at least heard to be, some perhaps misconceptions, not necessarily by the panel, but what's happening here. And first of all, we're not computing amount to be depreciated. We're computing the amount of interest to be capitalized to a construction.  is actual interest incurred by the company during this time period. And we're not calculating the amount of interest Yeah, but now here's my problem. Let's say I am doing some construction on this courtroom and I spend $5 million on construction costs in this courtroom. The same time I've got an improvement that needs to be made to the entire building. The foundation is a little bit shaky and I spend $5 million on the foundation of my building. Now the adjusted basis of this courtroom may be $10 million. And so the same amount, I spent $5 million to improve the courtroom, $5 million to improve the building. In one case, the adjusted basis is going to be 15 million, $5 million plus the $10 million in the courtroom. The same expenditure amount is going to, $5 million on the whole building is going to produce something in the hundreds of millions of dollars of adjusted basis. Even though I expended the same amount, maybe even use the same equipment in making the adjustments to this courtroom and to the entire building. How can you, that's absurd. How could there be such a vast difference between working in this courtroom or on the entire building? Well, I'm assuming these weren't happening simultaneously. Okay, that's the first question because this all has to do with timing and timing of the construction period. So basically the short answer, and there are a lot of moving parts here as I'm sure you understand. The short answer is it depends on what you're measuring. Now, what allocation of interest, the time period that you're looking at and what was happening construction-wise during that period. And if your adjusted basis... We're taking the variables out. Okay, well let's... Just taking the variables out of the equation and dealing with my simple hypothetical. The same expenditure in this courtroom and the same expenditure outside on the whole building and it produces hundreds of millions of dollars of difference in tax consequences. That's a basis adjustment? The basis is multiplied by an interest rate. Okay, so you... Okay, so the tax consequence is smaller than you might... Yes, it's a huge... I understand that we're multiplying it differently and that's the basis. It represents your unrecovered costs and the assets. It's the consequence of using your adjusted basis as the beginning analytic tool. Looking at that as though interest on the adjusted basis is a production cost. So I think what the chief judge was saying is, well, you have a situation, for example, in this case, if the adjusted basis of one of these plants had been close to zero because of the very old plant and been almost fully depreciated and the other plant was like brand new and you had spent the $2 million on each of the two plants, you get a wildly disproportionate result. And I think the question the chief judge is asking is, is a regulation rational if it produces that result? I have an answer... Thank you, you're always better than me. And so what's the answer to that question? If you may indulge me, I have an answer, but it takes a few steps to get there. I'm not trying to be difficult. We understand exactly how the mechanics work and we have worked out the production periods that were involved here. Right, and I'll try to keep it as simple as possible. What's your rationale for treating the interest on this adjusted basis as a production expenditure? It wasn't the money... For purposes of imputing interest. The statute and the regulation talks about expenditures. Amount expended, that means spent. Right. Now, how much money... For the asset. Right. Money was spent, right? Right, money was spent historically and that's where your basis comes from. It's the remainder of your... You spent money in year one, 20 years ago, whatever. But that wasn't... That gets appreciated in your adjusted... You know, whatever additions or subtractions. So your adjusted basis is the result, the remainder, if you will. Was that expended for the production of the improvement? Pardon me? Was that expended for the production of the improvement? No, but that's not what we're measuring with the interest allocation rule. What you're trying to figure out, and bear with me, you have an interest cost and when there's production happening, and the statute requires this, a portion of that interest has to go out of this income earning category where it is deductible and it's been sitting until you, you know, put the shovel in the ground or whatever. We understand. And then you move it here, okay? Sure. So the question is, how do you figure out how much this construction interest is going to be? And the adjusted basis comes into that formula, but it's not a dollar for dollar connection. The adjusted basis, and I'm not going to go through this, but afterwards, FAS 30 for 40. In my hypothetical, I'm using the same sort of equipment and I'm using, expending the same amount on a similar construction project. It's just that, let's use the better example of Judge Clevenger. In one instance, the adjusted basis is zero, and the other, the adjusted basis is millions, hundreds of millions. And how can making the same investment over the same time period with the same equipment produce such wildly divergent results? Okay, the key point here is that you do have a wildly divergent result, but the purpose of the statute is to treat old property being renovated and new property being constructed in the same manner. It creates what appears to be a perverse result, but your goal is to get this interest amount. And if you have unrecovered costs on the property, if you have property from years ago, you've probably paid off that loan. This is all theoretical. I'm not saying this is it. I understand. You've probably paid off that loan if you recouped your costs. You just don't have much money tied up in the asset. But if you bought the property recently and did major renovations relatively recently, maybe five years ago, conceptually, what you're looking at is, you know, think about this as this would be your loan. If you had to, and taking the property out of service is key too, because you had an operating building. Now, this court probably doesn't earn income, but... No, use the example in front of us. Copy Xerox charges or something. Anyway. There's an economic cost associated with taking the plant out of service. Right. And so rather than trying to quantify that economic cost, which would be really difficult, might require, excuse me, appraisals and so forth. You know, this is just a simplified approach to try and capture that cost. And the principle... Well, that's why adjusted basis is used instead of fair market value, right? Right. It's there. It's simple. It's all in the books. Everybody knows what it is. Right. And then Dominion doesn't have a problem with using adjusted basis for the bulldozer. It's the same concept. Well, I was going to ask you that, whether the adjusted basis for the bulldozers is statutory, isn't it? No, it's not. It's in the regulation. Yeah, Congress left all of this for the service to define and interpret. Well, talk to me about the legislative history, which seems to me to give an avoided cost principle, not an associated property rule, and seems to eliminate the absurd result that we talked about a minute ago. I'm not sure I entirely follow your question. But basically, the discussion of associated property and Congress's use... Not associated property, excuse me, avoided cost principle, and Congress's inclusion of that in the statute comes out of FAS 34. Yes, that's right. Getting back to that, right. And so, although the words of the statute describe a certain situation, there's more to the concept to that, as explained in FAS 34. And basically, the issue is, for a property that's an income earning property who is capitalizing interest for a different reason than it's capitalized for tax reasons, you have to keep that in mind. But what FAS 34 says is, whenever there's interest being incurred and property is intentionally being taken out of service, interest has to be capitalized. And that's what's happening with the associated property. Well, isn't... I mean, I think what the chief judge is asking is whether there's a complete disconnect between the notion of associated property and your avoided cost method. I think that's what's maybe troubling him. And I can understand the point. The avoided cost method, as is being described in the regulations, which is 63A9, is talking about the amounts that were expended for production. Taxpayers that must be capitalized, avoided cost method doesn't... Well, it doesn't depend on whether the taxpayer actually would have used the money expended for the production. So they're looking at amounts expended for production. Right. And we know that the statute contemplated the bulldozers, which are... and bricks and mortar, things that are used to put the piece of equipment to make the improvement, right? Right. And your argument is that the downtime of a plant can somehow be looked at as an amount expended for the production. No, my argument is that... I mean, there are economic costs. How do you get... I mean, the question is, if you're looking at an amount being expended, and I think what the chief judge is saying, that looks like somebody spent something. So you spent the money either for the burner, and then you spent money for a truck to carry the burner to the property, and you spent money to get the glue or whatever, the bolts that hook the thing up, right? So that's all talking about real life expenditures. And so the question is, what's the theory? What's the theory that lets you go to the adjusted basis of the property as some type of a surrogate for a production expense? This comes out of the definition of production expenditures in the statute, which describes costs, whether or not incurred in the production period. So we're talking about an undefined period of time. Well, I understand that. So whether or not incurred during the production period could mean the stuff that you do in advance of the period, because you had to rent the truck to bring the stuff, right? Or you had to pay that designer money to design the darn thing that you're going to put in. I appreciate that. But you're now taking something that is the adjusted basis of property. Right. You spent money to build this building in the first place. And that money went into the basis of that property. Those were your costs, your historic costs of this property that have been depreciated over time. Your adjusted basis is what you have left. This is a component of your actual out-of-pocket costs and that sort of thing. For building the building in the first place. So the associated property will- What's the reason for treating that fact? Yes, you had some money you spent once. And from a tax purpose, either it's worth zero if it's fully depreciated or it's worth the full value of what you paid for and if it's not depreciated at all. What's the theory that takes that fact and converts it into a production expense that was associated with putting the burners in place? Is it that it was an opportunity cost? This is going to the path. The question that Judge Lett how I think on the second leg, whether it's on the second leg or whether it's in the APA rationale, it's the same. They're saying, what was your reason for doing this? And now you're going to tell me what the reason was. Right. And basically, first of all, there's a misconception that this goes into the direct or indirect production costs that are capitalized. This goes into the formula for computing interest. I understand. And it's a different category. There has to be a reason for putting it in the formula. So I keep asking you over and over, what is the reason for looking at the adjusted basis of the properties that put it into the formula? The reason is it represents the taxpayer's entire investment in that asset, which is not being used to earn income. But we're only worried about the improvement. Pardon me? We're only worried about the improvement. We're only worried about, frankly, the funds that they expended for construction. The avoided cost method says, if funds had not been expended for construction, what is that amount? Not the amount expended for construction, not adjusted basis. Well, it doesn't say, doesn't... The expenditures have to be related to the improvement, not all expenditures ever made to build the building and their remaining value. Well, but it says with respect to the unit of property, not the improvement. I mean, there's a lot of gaps in the statute that have been filled here. Where is that one? That's exactly mine. It's very complex stuff. Am I missing something, or is this something coming out of left field here? I may have just missed something. I had the right page there. It says, if production expenditures, with respect to any property, with respect to production expenditures, and there's no temporal limit on production. I'm on addendum 31 on the blue brief. I'm looking at the... Okay. The avoided cost principle provision under allocation rules. Oh, you're under allocation rules? Right. Well, that's the avoided cost provision.  Right. A little too little eye. Are we on the same page here? Okay, so it refers to production expenditures. It doesn't say when those occurred. Now, normally, I agree that there is an anomaly when there's a gap in time between your original construction and your renovation, but Congress did not make any distinction for that in the statute. So basically, these are uniform rules that Congress enacted, and one of the purposes of the statute was that property be treated uniformly. So the statute treats property the same, whether it's built from scratch for the taxpayer's use, or purchased and subsequently renovated. Okay, so you get to the same number, and it may seem conceptually odd if there's a gap in time between the original construction and the renovation, but they're treated the same. It's the uniform treatment that Congress intended. Come back to that. Mr. Fox was helpful and very candid and useful to us when he and I asked him, what is the rationale for this? And he hypothesized the economic transaction in which somebody is timing how they're beginning to make their improvements. Right. He thought that was a problem that I understood him to say that the Treasury could address. And the Associated Property Rule gets at that problem. It does solve that problem. Now, the problem is the Associated Property Rule is kind of a blunt instrument, and it gets at more than just that possible economic circumstance, right? I'm not sure. Well, I mean, do you need... In order to solve the problem that Mr. Fox hypothesized, do you need the Associated Property Rule? You know, just off the top of my head, I don't think I can answer that question because it's a complicated question and I can't, you know, I just don't want to misspeak here. But basically... Strikes me as much too broad to address that rather narrow problem. Well, but Associated Property, if you read the definition, it's really constrained to items that directly benefit from or are incurred because of, for purposes of the improvement. So you're not talking about the uniform... But it's treating, I mean, it's looking at this property analogously as though it were the bulldozer and the other things that were involved on the front end and bringing the improvement into place. Right, because... And it's clearly related because, I mean, you would not have shut the plant down, but for the fact that you were making this particular improvement. Right. And there are economic costs associated with shutting the plant down. Is it your rationale at all that what's driving this desire to have the concept of Associated Property is to somehow find a surrogate way of assessing what the value of these opportunity costs are that were lost during this particular time when the plant was out of service. No, because the Associated Property exists even for new construction. Associated Property, if you have a raw piece of land, you will prepare that land, you know, maybe grade it, maybe do something, and maybe you don't start construction right away. You're waiting for a construction loan, looking for a tenant for the building you're going to build and so forth. So there's a gap in time between those land development costs, which are a cost of production, and then when you actually start building the building. So nothing happens with those costs, those preparatory costs, until you start building the building, and then it all starts going into basis. And then basis goes into the interest formula. I don't want to dominate the argument, but I mean, Judge Letow found this to be a very close and difficult case, I think, both on leg two in Chevron, as well as on whether or not there was an adequate explanation for APA purposes. And I believe at the end of his opinion, he said, well, it's close, but he said, you know, if we can discern a path in the mind of Treasury and sort of why it went where it did, then he read State Farm to say that could be fine. And he said, well, there's a path, although murky, there's a path. He didn't tell me what the path was. Now, you tell me what the path was. Well, the path he was looking at is different from my path. Just back up for a second. And you had been the person writing the final regulation. And you said to yourself, you know, the law requires us to explain what we're doing here. And this is sort of unusual because associated property exists in 106 paid regulation once. And when the regulation starts off and says it's property covered by this regulation, guess what? It doesn't say associated property. So it's really interesting. It's an odd concept. And if you can explain why you did it, maybe it's legitimate. That's what Judge Letow was saying under the law. What's the explanation? What's the path? We did it because that's what FAS 34 did. That's my short answer. Now I can go into more detail if you would like. But basically, this rule wasn't written. You know, we have a situation where there's a gap in time between construction and improvement. So this rule applies to all property. All property. So in most cases, there may not be associated property if it's a brand new building. And just to make it a little analytically simpler, associated property is the equivalent of adjusted basis for tangible property, to which these rules also apply. So you're talking about, when you're talking about a unit of property that includes all its functionally related- What do you mean there may not be associated property if the plant's brand new? Pardon me? You said there might not be associated property if the plant was new? If they're building it from scratch, yeah, there's nothing, you know, nothing's been built yet. Or if it's been fully- Once it's built. Once it's built. It's capable of being associated property because it's capable of being taken out of production when an improvement's made. Right, but- Let's have a question from Judge Reyna, and then we'll call us to conclusion. Yeah, I wanted to kind of bring us out of the detail into a little bit more of, and have you speak as to the purpose for the associated property rule. And I have great difficulty in following that rationale as well. Now, it seems to me that the regulation rests on the premise that the taxpayer can either improve the property or sell it. And in the case of utilities, that raises some very important issues as to whether they need to improve the property or not, whether they have a choice to. But aside from that, just applying to all property owners, is that really rational to say you must sell the property and then set no linkage as to the sale price with the fair market value of the property? And doesn't that really obviate the reason why somebody would even improve the property to begin with? Nothing compels someone to sell a property. It just represents a decision by the property owner on how it's going to- It's a business decision on how to proceed. And basically, the financial accounting standards say you include when interest is incurred during a period of time where you have intentionally taken property out of service, all of the costs, all of the capitalized costs. There should be a rational business decision whether to improve or not and how that's going to affect the value of the property. But when you have a regulation such as this, that results in a tax charge that has no linkage back to the actual value of the property, does that- I mean, is that rational? It does have linkage back to the money that you have in the property. Your adjusted basis is the remainder of your dollars that you invested in that property that have been depreciated over time. So there is a cost there from a prior period which is represented in the formula for which you determine how much interest will be allocated. Okay, thank you, Ms. Gregory. I think we've come to a conclusion. Mr. Fox, we'll give you three minutes to rebut. Thank you, Your Honor. Quickly, I'd like to say that there is nothing in FAS 34 that says anything about including associated property. We dispute that completely. And we understood her to say that's the rationale, right? Well, but- That's what she said. She said that. That's the fact. I think that is simply not the case. I mean, you'd have to- I mean, you can decide for yourself, I mean, by reading it, I suppose. But there is nothing in there that leaves- So we understand each other. I mean, I took the government to say that they are not relying on opportunity cost or economic cost as the rationale for what's driving them here. Did you understand that that's what she was saying? Yes. And I think we had talked earlier, it's a possible rationale one might have used if one wanted to, although, as you pointed out, there are other rationales that undermine that, right? And if, in fact, they are relying on FAS 34, there's certainly nothing in the treasury pronouncement about this that refers to that. That's, you know, post hoc and the statute, the law is clear that you have to put out the explanation at the time the regulation comes out, not in litigation. Two other quick points. Ms. Gregory suggested something about when you had the difference in the age of the properties, that, well, if you have an old property, the debt's probably going to fade. We are not dealing, in this case, with any debt that is directly attributable to property. That provision has nothing to do with this case. This is just the total outstanding debt of the company. So that's an irrelevant point. And as far as the statute not providing for using the basis of construction equipment, the statute doesn't say that in so many words, but that is clearly what the statute meant. It says that interest, just to read that provision, it says this subsection, capitalized interest, shall apply to any interest on debt allocable to, and the property used to produce property to the extent such interest is allocable to the produced property. And it was always understood that meant the basis, and the regulation is simply carrying that out. So it is in the statute. There is no provision like that dealing with associated property. And finally, I should say there is with regard to the bulldozers. With regard to the bulldozers and the other things. Oh, yes. That's a basis driven. Yes. Agreed. But that is a specific provision that does not apply here. It's been stipulated that the existing property was not used to produce the improvement. And finally, I think you put your finger on a very important point, and that is the obvious huge discrepancy between the amount of interest capitalized with respect to these two virtually identical projects. And I think that speaks volumes to suggest that without regard to Chevron Step 1, that that makes the regulation arbitrary and capricious under Step 2. Thank you, Mr. Fox. Thank you, Your Honors. Our next case is Germanaro versus the Department of Veteran Affairs.